## 61800. GREATER LEASING, INC. v. HILL.

DEEN, Presiding Judge.

The parties to this litigation entered into a written lease/purchase agreement involving an automobile which was eventually repossessed and sold after a series of defaults. The appellant's complaint sought damages for the difference between the contract and sale price plus costs of sale and attorney fees. The case was tried before a jury and a verdict was directed in favor of the defendant Hill. The plaintiff appeals.

1. "Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given the other of intention to rely on the exact terms of the agreement. Until such notice, the departure is a quasi new agreement." Code § 20-116. Applying this code section it was held in answer to a certified question that "evidence of the buyer's repeated, late, irregular payments, which are accepted by the seller does create a factual dispute as to whether a quasi new agreement was created under Code § 20-116." *Smith v. General Finance Corp.,* 243 Ga. 500 (255 SE2d 14) (1979). To the same effect, see *Curl v. Fed. Savings &c. Assn.,* 241 Ga. 29 (244 SE2d 812) (1978); *Hayes v. Fidelity Acceptance Corp.,* 147 Ga. App. 144 (248 SE2d 209) (1978).

2. It appears from the record in this case that the verdict was directed in favor of the defendant on the theory that there had been no reasonable notice by the lessor of intention to rely on the exact terms of the lease contract, after a series of acceptances of late payments. We reverse primarily on the ground that the evidence fails to demand such a conclusion.

The lease/purchase agreement called for installment payments of $195.44 per month to be paid on the 18th day of each month, with a practice of not counting a payment as a late payment unless it was more than 10 days overdue. Almost all payments after the first were late within this meaning. Checks bounced on August 22 and August 28, 1977, and letters declaring a default were sent in October and again in November after another check bounced. Two payments plus late charges were made on February 27, 1978, following a default letter dated February 14. The account was then current and no further letters were sent during the first half of 1978 except to inform the defendant of nonpayment of insurance. This was apparently attended to. Then a check dated May 18, 1978, was returned for lack of funds, was redeposited, and was again returned with the notation that the account had been closed. A default letter dated July 11, 1978,

was mailed to the defendant informing her of a default with two payments owing. Payment for one month was received on July 17 and credited against the overdue May installment. The July 18 payment came due the next day. On July 26 a second letter (in the same wording as the previous default letters) was mailed as follows: "Your lease is currently two months past due. Since you have failed to make payments according to the terms of your lease contract, your lease is hereby declared in default. We request that you return the vehicle to the Greater Leasing office, 4873 Buford Highway, Atlanta Ga., 30341, within 10 days from the date of this letter. If we have not received the vehicle within 10 days we will repossess the vehicle. After repossession, the vehicle will be sold in accordance with existing laws and should the selling price not settle the outstanding indebtedness, you will be held liable for any balance left owing on the obligation plus the cost of repossessing the vehicle." This last letter also included a statement that the May 10, 1978, check in the amount of $209.44 had been returned on account of the account being closed.

We regard this letter as creating a jury question as to whether this notice by the lessor that the lease was being terminated constituted a reasonable notice of intention to accept no more late payments, but to declare a breach for violation of contract terms, thus implying an intention to return to the exact terms of the agreement. It contains the flat statement that if within 10 days the vehicle has not been returned the vehicle will be repossessed. To say that because the vehicle was not in fact repossessed in June or before when previous letters were sent the lessor is now as a matter of law precluded from insisting on the contractual penalty for the admitted breach of contract would make it impossible for a creditor in such position to give more than one notice of intention to insist on the breach of contract. The fact that on former occasions the lessee had in fact answered the default letter by sending installment payments before the repossession actually took place does not require a holding that where such payment was not received and accepted the lessor must be denied his contractual remedy. A jury question remains as to whether it was the intention of the parties to enter into a new agreement. *Verner v. McLarty,* 213 Ga. 472 (99 SE2d 890) (1957) does not support the appellee's position that as a matter of law the appellant waived its right to stand on the terms of the default notice where no payment was received prior to the actual repossession of the car. In *Verner* there was a history of acceptance of irregular payments with no notice on the part of the creditor that the conduct of the debtor constituted a breach. It was accordingly error to remove the case from jury consideration.

*Judgment reversed. Banke, J., concurs. Carley, J., concurs in the*

*judgment only.*

DECIDED MAY 15, 1981.

*Robert A. Falanga, Luman C. Earle,* for appellant.
*Ron Parnell,* for appellee.